**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION**

RICHARD TUININGA, an individual, DAVENE TUININGA, an individual, SETH GIBSON, an individual, AMBER GIBSON, an individual, KENDALL EDWARDS, an individual, JEFFREY EDWARDS, an individual, FREDERICK NYQUIST, an individual, and BRIDGETTE LARIN, an individual,

Plaintiffs,

v.

NAUTILUS INSURANCE COMPANY, an Arizona Corporation,

Defendant.

NAUTILUS INSURANCE COMPANY, an Arizona Corporation,

Counterclaimant,

v.

RICHARD TUININGA, an individual, DAVENE TUININGA, an individual, SETH GIBSON, an individual, AMBER GIBSON, an individual, KENDALL EDWARDS, an individual, JEFFREY EDWARDS, an individual, FREDERICK NYQUIST, an

**CV-25-77-BU-BMM**

**ORDER ON MOTION FOR SUMMARY JUDGMENT AND CROSS MOTIONS FOR SUMMARY JUDGMENT**

individual, and BRIDGETTE LARIN, an individual,

Counter-Defendants.

## INTRODUCTION

Plaintiffs Richard Tuininga, Davene Tuininga, Seth Gibson, Amber Gibson, Kendall Edwards, Jeffrey Edwards, Frederick Nyquist, and Bridgette Larin (collectively "Plaintiffs") move for summary judgment against Defendant Nautilus Insurance Company ("Nautilus"). (Doc. 28.) Nautilus cross moves for summary judgment against Plaintiffs. (Doc. 33.) The Court held a hearing on the motion on July 8, 2026. (Doc. 57.) The Court grants the motions, in part, and denies the motions, in part.

## BACKGROUND

Plaintiffs live within the Village at Elk Run Subdivision in Three Forks, Montana. (Doc. 5 at ¶¶ 1–4.) TCToo, LLC ("TCToo") served as the builder and vendor of the Elk Run Subdivision. (Doc 35 at ¶ 3.) Nautilus insured TCToo under a commercial general liability insurance policy. (*Id*. at ¶ 1.) The policy period ran from July 11, 2022, to an effective cancellation date of October 11, 2022. (*Id*.) The

policy covered claims for "property damage" resulting from construction defects. (*Id.*)

Plaintiffs filed separate lawsuits against TCToo alleging damages for negligent constriction of their homes. (*Id.* at ¶¶ 18, 31, 41, & 52.) TCToo tendered the underlying complaints to Nautilus. (*Id.* at ¶¶ 11, 37, 46, 58.) Nautilus concluded that the policy provided no coverage and denied each of Plaintiffs' claims. (*Id.* at ¶¶ 26, 40, 51, 63.) Nautilus based its denial of coverage for Plaintiffs' claims on the prior work exclusion listed in the policy. (Doc. 36 at 20, 23, 25, & 27.) Nautilus also supported its denial of the Tuininga, Edwards, and Gibson claims based upon the tract home exclusion listed in the Nautilus policy. (*Id.* at 17, 25, & 28.)

TCToo consented to judgments against it in favor of Plaintiffs. (Doc. 5 at ¶ 49.) TCToo assigned its rights under the Nautilus policy to Plaintiffs. (*Id.* at ¶ 51.) Nautilus refused to defend TCToo against Plaintiffs' claims. (*Id.* at ¶ 56.) Contractors Bonding and Insurance Company ("CBIC") also insured TCToo under a liability insurance policy. (Doc. 35 at ¶ 2) CBIC defended TCToo under a reservation of rights and paid indemnity amounts to Plaintiffs on behalf of TCToo in the underlying complaints. (*Id.* at ¶ 5.)

Plaintiffs filed a complaint against Nautilus for declaratory relief on April 14, 2025. (Doc. 5.) Plaintiffs request the Court to determine whether Nautilus had the duty to defend TCToo and whether Nautilus unjustifiably refused to defend TCToo

in each of the underlying lawsuits (Doc. 5 at ¶¶ 57, 58.) Plaintiffs allege that the policy obligated Nautilus to indemnify TCToo in connection with the underlying lawsuits. (*Id*. At 11.) Plaintiffs request that the Court issue a declaratory judgment in Plaintiffs' favor. (*Id*.) The Court held a hearing on July 8, 2026. (Doc. 57.)

## LEGAL STANDARD

A court may grant summary judgment when the movant demonstrates that there exists "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. at 248. A court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor when viewing the record in deciding a summary judgment motion. *Tabares v. Huntington Beach,* 988 F.3d 1119, 1124 (9th Cir. 2021) (citations omitted).

## DISCUSSION

Nautilus contends that it is entitled to summary judgment as a matter of law for the following reasons: (1) the policy's prior work exclusion precludes coverage for all the lawsuits; and (2) the policy's tract home exclusion separately precludes coverage for all the lawsuits. (Doc. 36 at 32 & 36.) Plaintiffs, for their part, argue

that Nautilus's inability to demonstrate unequivocally that any of the policy exclusions defeat coverage entitles Plaintiffs to summary judgment. (Doc. 43 at 16.) Plaintiffs further argue that Nautilus has forfeited its right to deny coverage under Montana law after having failed to provide a defense to TCToo or to file a declaratory judgment action to resolve any potential coverage questions with the Court. (*Id*. at 9.) The Court will address each issue in turn starting with whether Nautilus forfeited its right to deny coverage.

**I. Whether Nautilus Forfeited Its Right to Deny Coverage.**

Plaintiffs filed this action alleging each of the underlying complaints triggered Nautilus's duty to defend and that Nautilus unjustifiably refused to defend. (Doc. 5 at ¶ 58.) Plaintiffs further contend Nautilus's denial must be judged solely on the allegations and information available to it at the time of tender of its denial. (Doc. 43 at 17.) Nautilus counters it has not forfeited the right to a coverage analysis. (Doc. 45 at 16.) Nautilus further argues the duty to defend hinges on whether Plaintiffs' claims implicate the Nautilus policy. (*Id*.)

The "duty to defend arises when a complaint against an insured alleges facts which, if proved, would result in coverage." *Tidyman's Mgmt. Servs., Inc. v. Davis,* 330 P.3d 1139, 1149 (Mont. 2014). A court determines whether an insurer has a duty to defend by comparing the factual allegations in the complaint to the coverage afforded under the policy. *Graber v. State Farm Fire & Cas. Co.,* 797 P.2d 214, 217

(Mont. 1990); *Farmers Union Mut. Ins. Co. v. Staples,* 90 P.3d 381, 385 (Mont. 2004). Importantly, "it is the acts giving rise to the complaint which form the basis for coverage, not the complaint's legal theories or conclusory language." *Town of Geraldine v. Mont. Mun. Ins. Auth.*, 198 P.3d 796, 800-01 (Mont. 2008). Thus, when it is apparent that the allegations in a complaint are "either incomplete or inaccurate, given the facts or questions of fact presented[,]" insurers (and by extension, the court) can look beyond the four corners of the complaint. *Revelation Indus. v. St. Paul Fire & Marine Ins. Co.*, 206 P.3d 919, 925 (Mont. 2009).

Plaintiffs' underlying complaints allege that TCToo negligently built and repaired Plaintiffs' houses and made negligent representations and warranties regarding the houses and TCToo's work on the houses. (Doc. 35 at ¶ 17.) Plaintiffs' underlying complaints remain silent as to when any such negligent construction, repairs, representations, or warranties occurred. (Doc. 31 at 10.) Plaintiffs contend that Nautilus cannot justifiably rely on the prior work exclusion in the Nautilus policy when the underlying complaints did not include the dates as to when any of the negligent repairs, representations, or warranties occurred. (*Id.*) Plaintiffs argue Nautilus's invocation of the tract home exclusion fares no better, as the underlying complaints fail to allege the houses to be "tract homes." (*Id*. at 4, 5.) Plaintiffs further contend that neither of the exclusions had been triggered at the time the underlying complaints were tendered to Nautilus. (Doc. 43 at 17.) Plaintiffs lastly argue that

Nautilus's failure to file a declaratory judgment action forfeited its right to deny coverage altogether. (*Id*. at 14, 15.)

"There must exist an unequivocal demonstration that the claim against the insured does not fall within the policy coverage before an insurer can refuse to defend; otherwise, the insurer has a duty to defend." *Newman v. Scottsdale Ins. Co.*, 301 P.3d 348, 359 (Mont. 2013.) If an insurer unjustifiably refuses to defend, it is estopped from denying coverage and becomes liable for defense costs and judgments. *Tidyman's*, 330 P.3d at 1149. An insurer who breaches the duty to defend stands liable for the full amount of the judgment, including amounts in excess of policy limits. *Nelson v. TIG Ins. Co.*, 442 F.Supp.2d 972, 980 (D. Mont. 2006).

"Coverage by estoppel is only applicable where an insurer unjustifiably refuses to defend." *St. Paul Fire & Marine Ins. Co. v. Franz Constr., Inc.,* No. CV 25-05-BLG-TJC, 2026 U.S. Dist. LEXIS 5524, at *20 (D. Mont. Jan. 12, 2026). An insurer has not unjustifiably breached any duty to defend if an insurer has determined that a claim does not present any coverage under the policy at issue. *Id.; see also, e.g.*, *Lloyd A. Twite Fam. P'ship v. Unitrin Multi Line Ins*., 192 P.3d 1156, 1160 (Mont. 2008.). The Montana Supreme Court recognized in *Lloyd A. Twite* that "there is nothing for the court to construe, and no reason to impose a duty to defend" when a claim falls unequivocally outside the policy's coverage. *Lloyd A. Twite*, 192 P.3d at 1160. The court in *Franz Construction, Inc*., similarly refused to reach the issue

of whether the insurer had complied with the duty to defend when the complaint in the underlying action failed to present any potential coverage under the policies at issue. *Franz Constr., Inc*, at *20.

**A. Prior Work Exclusion.**

The underlying complaints did not allege the dates as to when the negligent construction repairs, representations, or warranties occurred. This omission permitted Nautilus to look beyond the four corners of the complaint to determine when they occurred. *Revelation Indus*., at 206 P.3d 919, 926. Nautilus conducted investigations outside the underlying complaints in each of the underlying lawsuits and sought to determine the dates when TCToo had finished the construction of the houses or last had made repairs to the houses. (Doc. 35 at ¶¶ 11, 38, 47, & 59.) Nautilus denied coverage to each Plaintiff based upon its findings that the prior work exclusion applied to the houses where TCToo had completed construction on the houses before July 11, 2022. (*Id*. at ¶¶ 13, 39, 48, & 59.)

These facts permitted Nautilus to look beyond the four corners of the complaint. Nautilus provided an unequivocal demonstration in not defending TCToo. The policy covered work performed by TCToo after July 11, 2022. Nautilus's investigation revealed that TCToo had completed the houses before July 11, 2022. The Court follows the reasoning adopted in *Franz Construction, Inc.* The underlying complaints did not implicate any potential coverage as they did not claim

the date of construction or any representations or warranties made regarding the houses. Nautilus's permissible investigation led them reasonably to conclude the construction of the homes had been completed before July 11, 2022. The Court finds Nautilus did not breach the duty to defend and will not be estopped from denying coverage based on the prior work exclusion.

**B. Tract Home Exclusion.**

The underlying complaints did not allege the houses to be "tract homes" and instead described the houses as being "spec homes." (Doc. 29 at 9.). During its investigation for the prior work exclusion, Nautilus alleges it learned the Tuininga, Edwards, and Gibson houses each qualified as "tract homes" as defined under the Nautilus policy. (Doc. 35 ¶ 15, 49, 61.) Nautilus found the houses to be similarly designed and located within the same subdivision. (*Id.*) Nautilus also found the houses had been built by TCToo. (*Id.*) Nautilus denied coverage for the claims presented by the Tuiningas, Gibsons, and Edwardses under the tract home exclusion based upon these findings.

Nautilus determined the allegations in the complaints describing the houses as "spec homes" to be inaccurate. Nautilus believed the houses were similar in design and located within the same subdivision. Nautilus permissibly looked beyond the four corners of the complaint to discover relevant information. Plaintiffs alleged the houses to be spec homes because the homes "were to be built and sold at a profit."

(Doc. 35 at ¶¶ 20, 33, 42, & 53.) The allegations did not describe how or why the homes were "spec homes." The bare allegations allowed Nautilus to look beyond the four corners of the complaint. It was not unjustifiable for Nautilus to deny coverage based upon the tract home exclusion and on the information learned by Nautilus. The Court finds Nautilus did not breach the duty to defend and will not be estopped from denying coverage based on the tract home exclusion.

## II. Whether the Policy Provides Coverage.

The Court next addresses whether Nautilus had a duty to defend and indemnify TCToo against claims brought in the underlying lawsuits. "[T]he interpretation of an insurance contract presents a question of law." *Allstate Vehicle & Property Ins. Co. v. Frank*, 687 F. Supp. 3d 1033, 1040 (D. Mont. 2023). Montana courts follow "the well-established principle that when the language of a policy is clear and explicit, the policy should be enforced as written." *United Nat'l Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 214 P.3d 1260, 1265 (Mont. 2009). Courts "accord the usual meaning of the terms and the words in an insurance contract" and "construe them using common sense." *Modroo v. Nationwide Mut. Fire Ins. Co.*, 191 P.3d 389, 395 (Mont. 2008). Montana law recognizes the rights of parties to contract freely for permissible policy exclusions. *Goss v. USAA Cas. Ins. Co.*, 498 P.3d 187, 220 (Mont. 2021). Policy exclusions limit an insured's scope of coverage under an insurance contract. *Stillwater Condo. Assoc. v. Am.*

*Home Assurance Co.*, 508 F. Supp. 1075, 1079 (D. Mont. 1981). Courts must read policy exclusions separately and independently from each other. *Id*.

An insurer's duty to defend "pertains" to an insurer's "duty to affirmatively defend its insured against pending claims." *Skinner v. Allstate Ins. Co.*, 127 P.3d 359, 364 (Mont. 2005). "The duty to defend is triggered more easily than is the duty to indemnify." *Id*. For instance, "where there is a duty to defend, there is not necessarily a duty to indemnify." *Id*. "The duty to defend arises when a complaint against an insured alleges facts, which if proven, would result in coverage." *Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 385 (Mont. 2004).

An insured bears the initial burden to show that the underlying lawsuits fall within the scope of an insurance policy's coverage. *Travelers Cas. & Surety Co. v. Ribi Immunochem Rsrch., Inc.*, 108 P.3d 469, 475 (Mont. 2005). The burden shifts to an insurer to demonstrate unequivocally that the "that the contested claim does not fall within the policy." *Nielsen v. TIG*, 442 F. Supp. 2d 972, 976 (D. Mont. 2006). "The duty to indemnify relates to" an insurer's "duty to satisfy a judgment entered against the insured." *Skinner*, 127 P.3d at 364. "[T]he duty to indemnify does not arise unless the policy actually covers the alleged harm." *Id*. "A conclusion that there is no duty to defend compels the conclusion that there is no duty to indemnify." *Farmers Ins. Exch. v. Wessel*, 477 P.3d 1011, 1107 (Mont. 2020).

The Court first will interpret the Nautilus policy to determine whether the underlying lawsuits fall within the Nautilus policy's scope of coverage. The Court then will determine whether any exclusion applies to Plaintiffs' underlying complaints.

**A. Scope of Coverage.**

The Court first must determine whether the underlying lawsuits against TCToo fall within the Nautilus policy's scope of coverage. The policy covers an insured party's defense if "the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies . . . ." (Doc. 35 at ¶ 8.) The policy defines "property damage" as "[p]hysical injury to tangible property, including all loss of use of that property" and "loss of use of tangible property that is not physically injured." (Id. at ¶ 10.) The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Id. at ¶ 9.)

The underlying lawsuits against TCToo include allegations that TCToo negligently built and repaired Plaintiffs' houses and made negligent representations and warranties regarding the houses and TCToo's work on the houses. (*Id*. at ¶ 17.) The underlying lawsuits further allege that these actions resulted in property damage and other damages to Plaintiffs. (*Id*. at ¶ 18.) The Court determines that the underlying lawsuits fall within the Nautilus policy's scope of coverage when

Plaintiffs allege that they suffered "property damage" due to TCToo's negligent work on their houses and representations about their houses.

The Court next must determine whether an exclusion applies to the underlying lawsuits to preclude coverage under the Nautilus policy. The two most pertinent policy exclusions to Plaintiffs' claim for coverage under the Nautilus policy are (1) the prior work exclusion, and (2) the tract home exclusion. The Court will consider separately each of these exclusions.

**B. Whether the Prior Work Exclusion Applies.**

Plaintiffs argue that the prior work exclusion would not preclude coverage in this instance. Plaintiffs contend that Nautilus fails to demonstrate unequivocally that TCToo completed work on Plaintiffs' houses or made representations and warranties about Plaintiffs' houses before July 11, 2022. (Doc. 31 at 12.) Plaintiffs further suggest that Nautilus cannot deny coverage under this exclusion when the underlying complaints failed to allege a specific time that TCToo repaired Plaintiffs' homes and represented and warranted its work to Plaintiffs. (Doc. 31 at 20.)

The Nautilus policy excludes coverage for "property" damage included in the ''products-completed operations hazard' and arising out of 'your work' that was completed by or on behalf of any insured" before July 11, 2022. (Doc. 35 at ¶ 9.) The Nautilus policy defines "your work" as "[w]ork or operations performed by you or on your behalf," including "warranties or representations made at any time with

respect to the fitness, quality, durability performance, or use of 'your work.'" (Id.) The Nautilus policy deems "your work" as completed at the following times: "(a) when all of the work called for in your contract has been completed;" "(b) when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site;" and "(c) when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project." (*Id.*)

Montana state courts have yet to interpret and analyze insurance contract provisions employing prior work exclusions. Other federal courts have interpreted this type of exclusion to bar coverage for claims of property damage from work completed before an exclusion's cut-off date. *See e.g., Nautilus Ins. Co. v. Ricciardi Dev.*, LLC 2012 U.S. Dist. LEXIS 161244, at *15 (N.D. Ill. Nov. 9, 2012) ("Because it is undisputed that [the insured parties] completed their work on the porch and guardrail before September 11, 2008, the [prior work] exclusion unambiguously applies and Nautilus has no duty to defend."). For example, the District of Nevada ruled in favor of an insurer where evidence demonstrated that the insured party had halted work on its building project before the insurance policy's effective date of warranty for the insured party's work. *Midcentury Ins. Co. v. Gemini Ins. Co.*, 2009 U.S. Dist. LEXIS 149464, at *15 (D. Nev. Jun. 9, 2009). The Northern District of Illinois similarly reasoned that an insurer "would have no duty to defend a claim for

damages stemming from" a burst water pipe where "the 'work,' the installation of the pipe, would have occurred before" the start of the policy coverage. *Nautilus Ins. Co. v. Raatz*, 2012 U.S. Dist. LEXIS 90174, at *25 (N.D. Ill. Jun. 29, 2012).

The underlying complaints fail to allege a specific time that TCToo repaired or made representations and warranties about Plaintiffs' houses. The schedule to complete work on Plaintiffs' houses unambiguously set a deadline of July 11, 2022. (Doc. 35 at ¶ 11.) Nautilus conducted its own investigation and reviewed the underlying complaints with a focus on whether any construction occurred on Plaintiffs' houses after the July 11, 2022 deadline. (Doc. 35 at ¶¶ 13(a), 38(a), & 44; Doc. 10-7 at ¶ 34.), Nautilus requested from Plaintiffs during its investigation of facts as to whether TCToo had completed work on the house after the Nautilus policy's inception on July 11, 2022. (Doc. 50 at ¶ 2.) Plaintiffs allegedly failed to provide information to Nautilus regarding TCToo's work, representations, and warranties after the July 11, 2022, deadline. (Doc. 49 at 8.) Nautilus permissibly considered facts outside the four-corners of the underlying complaints to determine whether the Nautilus policy triggered. *See Burns v. Underwriters Adjusting Co.*, 765 P.2d 712, 713 (Mont. 1988) (The "proper focus of inquiry is the acts giving rise to coverage, not the language of the complaint.").

Nautilus's investigation determined that TCToo had completed the Gibson house on or about July 15, 2021, and the Larin/Nyquist house on or about July 20,

2020. (Doc. 35 at ¶¶ 38(a), 39(a), 59(a) (60(a)). Even without conducting its own investigation, Nautilus properly determined that the prior work exclusion barred the Edwards family's claims as the underlying complaint alleges that the Edwards family had purchased their house from Marchbuilt, LLC in January 2022 or seven months before the July 11, 2022 deadline. (Doc. 35 at ¶ 44.) Nautilus unequivocally demonstrates that the prior work exclusion applies at least to the Edwards, Larin/Nyquist, and Gibson families' houses. *Nielsen*, 442 F. Supp. 2d at 976.

Nautilus has not demonstrated unequivocally that the prior work exclusion barred the Tuininga family's claims as the facts remain in dispute regarding completion of the final construction of the house. Nautilus alleges the house was completed before July 11, 2022. (Doc. 35 at ¶ 13.) Plaintiffs allege the field adjustor hired by Nautilus, David Ross, concluded the house was finished in "July of '22," and the closing date of the house was July 18, 2022, about seven days after July 11, 2022 deadline for policy coverage. (Doc. 44 at ¶ 14.) Plaintiffs further counter that Nautilus took contradictory positions regarding the completion date of the initial construction of the houses. (*Id.*) For these reasons, the Court finds a dispute exists as to when TCToo completed the initial construction of the Tuininga's house. The Court finds a dispute of material fact exists as to whether the Tuininga house falls within the prior work exclusion. *Anderson, at* 477 U.S. 242, 248.

### C. Whether the Tract Home Exclusion Applies.

The Court next determines whether the tract home exclusion applies to Plaintiffs' claims. Plaintiffs argue that the tract home exclusion would not preclude coverage in this instance because Nautilus fails to demonstrate unequivocally that Plaintiffs' houses fall within the definition of "tract home" as defined in the Nautilus policy. (Doc. 31 at 29.) The Court will apply the tract home exclusion only to the Tuininga home as Nautilus did not claim the tract home exclusion for the Larin/Nyquist house. The Court further determined the prior work exclusion already excluded coverage for the Gibson and Edwards houses. The Court will not analyze whether the tract home exclusion applies to the Gibson, Larin/Nyquist, or Edwards houses.

The Nautilus policy excludes coverage for "property damage" arising out of the insured's work "that is incorporated into or performed at" a "[t]ract home." (Doc. 35 at ¶ 8.) The Nautilus policy further defines "tract home" as (1) "one of multiple similarly designed one, two, three, or four family dwellings; and (2) located in a development project, in which one parcel or plot of land is subdivided into multiple lots, tracts, parcels or other subdivision of land for the 'construction' of multiple 'tract homes.'" (*Id.*)

Montana courts have yet to interpret and analyze insurance contract provisions employing tract home exclusions. Other federal courts have found similar exclusions unambiguously to preclude coverage for claims involving an insured's construction of tract housing. *See e.g., Hay v. Am. Safety Indem. Co.*, 752 Fed. Appx. 460, 462 (9th Cir. 2018) (holding that the language of a tract housing exclusion proves "unassailable" and precluded coverage for the allegations against the insured construction contractor). The underlying complaints fail to allege that the houses are "tract homes." The Nautilus policy unambiguously defined the term "tract home." (Doc. 35 at ¶ 8-C8.)

Nautilus conducted its own investigation and reviewed the underlying complaints with a focus on whether any of the constructed houses satisfied the definition of "tract home" under the Nautilus policy. (*Id*. at ¶¶ 15(a), 49(a), & 61(a). Nautilus requested from Plaintiffs during its investigation facts as to whether Nautilus incorrectly applied the definition of "tract home" to Plaintiffs' houses. (Doc. 49 at 9.) Nautilus claims that Plaintiffs failed to provide information to Nautilus relevant to Nautilus's application of the tract home exclusion. (*Id*.) Nautilus permissibly considered facts outside the four-corners of the underlying complaints to determine whether the claims triggered coverage under the Nautilus policy. *See Burns v. Underwriters Adjusting Co.*, 765 P.2d 712, 713 (Mont. 1988). As noted in

*Burns*, the "proper focus of inquiry is the acts giving rise to coverage, not the language of the complaint." *Id.*

Nautilus's initial investigation determined that the house plans for the Larin/Nyquists, Tuiningas, Edwards, and Gibsons were like plans for other houses built by TCToo in the Village at Elridge Subdivision. (Doc. 35 at ¶ 15(c), 49(a), & 61(a).) The houses were not identical in every aspect, but the houses were "similarly designed," to meet the first part of the definition of "tract home" under the policy. (Doc. 49 at 13.) The Court finds the Tuininga home likely satisfies the first element of the definition of "tract home" under the policy.

The second element requires that the houses be located within one development project and the houses be located on one plot of land that has been subdivided into multiple lots. (Doc. 35 at ¶ 8.) Nautilus argues the "tract home" exclusion applies, but it has failed to demonstrate the houses are located on one plot of land that has been subdivided into multiple lots. Plaintiffs counter with the following facts: (1) the houses are located on plots of land that differ in size; (2) the developer of the Elk Ridge subdivision did not require the buyers to build houses on the plots of land; and (3) that the buyers were free to build whatever style of house they desired. (Doc. 43 at 28.) The Court finds the Tuininga house fails to satisfy the second element of "tract homes" under the Nautilus policy. The house seems "similarly designed" to other houses within the subdivision. The record fails to

establish, however, that the houses are located on subdivided plots of land. The Court finds the Nautilus policy does not exclude coverage for the Tuininga's home.

## CONCLUSION

The Court grants in part, and denies, in part, Plaintiffs' Motion for Summary Judgment. (Doc. 28.) Plaintiffs are not entitled to summary judgment on its claim that Nautilus unjustifiably refused to defend TCToo. The Court finds Nautilus has not forfeited their right to deny coverage under the Nautilus policy. Plaintiffs are not entitled to summary judgment on its claim that Nautilus failed unequivocally to demonstrate the contested claims fall outside its policy coverage. Nautilus has unequivocally demonstrated that the Gibson, Edwards, and Larin/Nyquist contested claims fall outside its policy coverage. *Nielsen*, 442 F. Supp. 2d at 976. Nautilus has not unequivocally demonstrated that the Tuininga contested claims fall outside its policy coverage. Disputes of material facts exist as to whether the Tuininga's home had been completed before July 11, 2022. Plaintiffs are further entitled to summary judgment regarding the tract home exclusion as Nautilus has failed to demonstrate unequivocally the house falls within the tract home exclusion in the Nautilus policy.

The Court grants, in part, and denies, in part, Nautilus's Motion for Summary Judgment. (Doc. 33.) Nautilus is entitled to summary judgment that the policy's prior work exclusion precludes coverage for the Gibson, Edwards, and

Larin/Nyquist claims. Disputed issues of material facts remain as to whether the prior work exclusion applies to Tuininga's claims. The Court also denies summary judgment to Nautilus on the issue of whether the policy's tract home exclusion precludes coverage for the Tuininga's claims.

**ORDER**

Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 28) is **GRANTED** in part, **and DENIED**, in part. Nautilus's Motion for Summary Judgment (Doc. 33) is **GRANTED** in part, and **DENIED**, in part.

DATED this 28th day of September, 2026.

Brian Morris, Chief District Judge
United States District Court